Curia, per
O’Neall, J.
The suggestion states that Eliza Kohne is the owner of a slave called Emma, who had been seized by a constable, under an information made by James Simmons, to the magistrate, B. C. Pressley, and had been carried before him to be condemned, as forfeited by the owner, for being taken by her mistress to the north of the Potomac, into some State or States from which slaves are forbidden to come into this State; and that the respondents, under the Act of 1835, (Acts of ’35, pages 36 and 37,) are about organizing a Court of two Magistrates and five Freeholders, to pronounce the judgment of forfeifeiture, and cause the slave to be sold. The writ of prohibition was prayed for, and granted, on the ground that the Act authorizing these proceedings was unconstitutional and void. The question here has been presented in a twro fold point of view. 1st. Will the writ of prohibition lie 7 2nd. Is the Act unconstitutional Í 1st. In considering the first question, it will be considered as conceding the unstitutionality of the Act. It then assumes, that the defendants are merely private persons, acting upon their own authority, and not in a judicial capacity. It will, however, be seen, on examining the 6th and 7th sect, of the Act ’35, (7 Statutes at Large, 472, 473,) that the acts of the defendants are preliminary to, and part of, the proceedings necessary to produce a condemnation of the slave, as for *766 feited according to the provisions of the Act of ’35. Regarded in this way, the only question is, has the inferior jurisdiction, which has thus commenced to act, jurisdiction of the subject matter ; if it has not, the writ of prohibition lies to arrest its proceedings in any stage. The analogous case constantly occurring in our Courts, where a man, who alleges he is a white man, is charged before a Court of Magistrates and Freeholders with a crime, is an illustration of the rule, there the writ of prohibition lies to arrest the proceedings in any stage, until the question of color be determined, and if it be found for the relator, then the prohibition is made absolute and perpetual. So in this case, if the Act be unconstitutional, the whole authority for the proceedings is taken away, and the writ of prohibition must go against this false assumption of judicial authority.
2nd, The 6th section of the Act of ’35, provides for the case of a slave carried out of the State for a time, and during that time visiting any State north of the Potomac, or City of Washington, and afterwards being brought into this State, and in such case declares the person introducing such slave into this State to be liable to a forfeiture of $1000, and that such slave shall be forfeited. The 7th section provides the mode of proceeding to consummate the forfeiture of the slave. It authorizes any white person or constable, on information, to seize the .slave, and carry him or her before some magistrate, “ who shall forthwith commit such slave to prison, and there keep him or her, until the owner or person introducing such slave into this State, shall make oath, that at no time during the absence of such slave from this State, he or she have been in any part or place prohibited by this Act. And should such owner or person introducing such slave neglect or refuse to make such oath for the space of ten days after he or she shall have received notice of the arrest of such slave, and of the cause thereof, it shall be the duty of the magistrate to form a Court of two Magistrates and five Freeholders, and on proof to the satisfaction of such court that such slave has been beyond the limits of this State, and that such owner or person who shall have introduced such slave into this State, aforesaid, after having been served with the notice of such slave being arrested, as aforesaid, and of the cause *767 of such arrest, has neglected or refused to make oath as aforesaid, it shall then be lawful for said court to order the said slave to be sold at public sale, and the proceeds of such sale shall go and be appropriated one half to the State, and the other half to the use of the informer.” The 2nd sec-"; tion of the 9th article of the Constitution of this State declares that “ no free man of this State shall be in any manner deprived of his life, liberty or property, but by the judgment of his peers, or by the law of the land.” The 6th section of the same article declares “ that the trial by jury, as heretofore used in this State, shall be forever inviolably preserved.” By these sections the forfeiture of the slave under the 6th and 7th sections of the Act of’35, must be judged. That every free white person resident in South-Carolina is in general protected in life, liberty and property, until the same be1 forfeited, in a due course of law, cannot be questioned. This due course of law is most usually and satisfactorily administered by a trial by a jury of twelve good and lawful men of the vicinage. To this there are some exceptions. But to be such it must appear they are caused by the “law of the land.” First then, what is meant by the law of the land? In this State, taking as our guide Zylstra’s case, 1 Bay, 384; White v. Kendrick, 1 Brev. 471; The State vs. Coleman and Maxcy, 1 M’Mull. 502: there can be no hesitation in saying, that these words mean the common law and the statute law existing in this State at the adoption of our constitution. Altogether they constitute the body of law, prescribing the course of justice to which a free man is to be considered amenable, in all time to come. The jurisdiction of Magistrates as high as £5, then existing, and their authority, conjointly with freeholders, to declare a man a vagrant in specified cases, are parts of the law of the land, and it is hence unnecessary, in such cases, that there should be a trial by jury. If there had been any authority conferred on magistrates and freeholders to divest the owner of a slave of his property, for carrying him out of the State, and afterwards bringing him back, before our Constitution, it might be that the offence now carved out by the Act of ’35, being of the same kind, might be tried by" the same forum. But no such law can be found, and none such ever *768 before existed. All the Acts operating upon slaves directly, and to punish them, do not fall within the inhibition of the Constitution. For a slave is not a freeman. Neither do the Acts for the trial and punishment of free negroes, mulattoes, mustizoes, Indians, (except free Indians in amity,) fall within this provision of the Constitution, for the forum to which they are amenable existed and was part of the law of the land at the adoption of the Constitution. No countenance, therefore, for this proceeding under' the Act of ’35, can be found in any of the Acts for the regulation of slaves or free negroes. It is next necessary to test the Act by what is meant “ by the judgment of his peers” and “the trial by jury, as heretofoie used in this State, shall be forever inviolably preserved.” The “judgment of his peers ” means in general the great unalienable common law mode of trial by twelve good and lawful men of the vicinage, in the presence of the accused, and by the oath of a witness. And the words “ the trial by jury, as heretofore used in this State, shall be forever inviolably preserved,” mean that in all cases where it had not been previously abandoned, it should be continued to every freeman, and of course to every woman and child ; they being embraced in the larger general terms used. The property of Mrs. Kohne, her slave, is attempted to be forfeited by a trial before two Magistrates and five Freeholders. This is not a trial by jury, in any sense in which the words have ever been legally used; neither could a judgment pronounced by them be regarded as the judgment of her peers. It hence follows that the Act of ’35, having undertaken to clothe a forum with the power of depriving Mrs. Kohne of her property, which is not sustained by the law existing at the adoption of the Constitution, and which does not proceed by the common law mode of trial by jury, is so far unconstitutional and void ; and that, therefore, the whole of the proceedings under the Act of ’35 are illegal. The motion to reverse the decision is dismissed.
Johnson, Johnston, and Dunkin, Chancellors, with Evans, Butler, WARDLAwand Frost, JJ. concurred. Judge Richardson did not hear the argument.